# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 10, 2009

## STATE OF TENNESSEE v. ALDRICK D. LILLARD

**Appeal from the Circuit Court for Rutherford County**
**No. F-58763B   Donald Harris, Judge**

---

**No.  M2008-00575-CCA-R3-CD - Filed September 15, 2009**

---

Appellant, Aldrick D. Lillard, and two other individuals were indicted by the Rutherford County Grand Jury for first degree murder, felony murder, especially aggravated robbery, especially aggravated burglary, conspiracy to commit especially aggravated burglary, conspiracy to commit especially aggravated robbery, and theft of property in connection with the death of Randy Betts. After a jury trial, Appellant was convicted of first degree murder, felony murder, especially aggravated robbery, aggravated burglary, conspiracy to commit aggravated burglary, and conspiracy to commit aggravated robbery.[1]  The trial court merged the felony murder conviction into the first degree murder conviction.  The jury sentenced Appellant to life without the possibility of parole for the murder conviction.  On the remaining convictions, the trial court sentenced Appellant to an effective sentence of twenty-five years.  The remaining sentences were ordered to be served concurrently with the life sentence.  After the denial of a motion for new trial, Appellant initiated a timely appeal.  On appeal, the following issues are presented for our review: (1) whether the evidence was sufficient to support the convictions; (2) whether the Appellant was prejudiced because one judge ruled on pre-trial motions and a different judge presided over the trial; (3) whether the trial court improperly allowed the jury to view the trial exhibits in the jury room; (4) whether the trial court properly denied the motion for bill of particulars; (5) whether the trial court improperly admitted a portion of videotaped evidence which referenced Appellant's prior incarceration; and (6) whether the trial court improperly omitted lesser included offenses from the jury instructions.  After a thorough and complete review of the record, we determine Appellant is not entitled to relief.  Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

R. Timothy Hogan and Joe M. Brandon, Jr., Murfreesboro, Tennessee, for the Appellant, Aldrick D. Lillard

---

[1] The theft of property charge was not submitted to the jury for deliberation.  It was later nolle prossed.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Bill Whitesell, District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The victim, Randy Betts, was discovered by his daughter, Brandy Betts, at around 2:00 p.m. on December 20, 2005. Ms. Betts went to her father's home located at 131 Neal Avenue in Smyrna, Tennessee, to assist him with a Christmas tree and found him lying on the floor "with his eyes open and blood all around him." Ms. Betts left the home immediately and went next door to Ed Davis's house.

William David Elliot was next door at Ed Davis's house on December 20, 2005. When Ms. Betts knocked on the door, she asked for assistance in opening her father's front door. Mr. Elliot and Mr. Davis walked next door where they discovered the victim lying on his back on the floor. The victim was clad in a t-shirt and underwear and had what appeared to be a head wound. Mr. Davis walked around the residence to make sure that there was no one else present while Mr. Elliot called 911 and the Sheriff's Department. They waited at the residence until the police arrived.

When the Rutherford County Sheriff's Office arrived on the scene, Ms. Betts, Mr. Elliot, and Mr. Davis were waiting. According to Lieutenant Glenn Morton, the front door of the residence would only open about a foot and a half. Rutherford County EMS workers examined the victim and noted a single gunshot wound to the left side of the neck.

An autopsy revealed that the victim's death was the result of a single gunshot wound to the left side of the neck. Once the bullet entered the body, it traveled from top to bottom and left to right. The bullet settled in the abdomen. There was gun powder stippling on the victim's face and left shoulder that indicated the shooter was two and a half to three feet from the victim at the time of the shooting. According to Dr. Feng Li, Deputy Medical Examiner for Davidson County, the stippling was consistent with the victim's shoulder being close to his face at the time he was shot. Dr. Li opined that the victim could have been crouched down with his shoulder drawn to his face at the time the shot was fired from above.

During the investigation, the police discovered that the victim had a gun safe in his home. ATF forms indicated that the victim owned a nine-millimeter handgun with the serial number S349. Police also discovered one spent shell casing in the living room near the victim's leg and one in a gray chair to the left of the victim. Both shots appeared to be fired from inside the home. One round hit the victim. Another round traveled through the living room couch, through the wall, and into the backside of a bathroom.

-2-

The investigation into Mr. Betts's death was led by Detective Ty Bart Downing of the Rutherford County Sheriff's Department. In conjunction with the investigation, the victim's son discovered that there was activity on the victim's bank card after his death. The purchases were traced to New York Fashion, a store in Hickory Hollow Mall. Detective Downing was able to talk to the manager of the store, who provided a description of a couple who purchased items at the store with the victim's credit card. A female signed the victim's name on the receipt. The female told the manager that the card belonged to her father. One of the transactions occurred on December 20, 2005, at approximately 12:51 p.m., after the victim's death. The card was eventually denied, and the manager claimed that he basically chased the couple out of the mall. The manager of the store wrote down the drivers' license of the female during one of the transactions. The police learned that the drivers' license was listed to Vanessa Claude whose address was listed as 3817 Cricket Lane.

Police went to Ms. Claude's home on December 21, 2005. A male voice initially answered the door, but when police announced their presence, it was met with silence. The door was then answered by Ms. Claude, whose mother then gave permission to search the home for the source of the male voice. Appellant was hiding behind a door in a bathroom. Appellant and Ms. Claude were arrested. Police obtained permission to search the rest of the house.

At the home, officers found the jacket that had been purchased from New York Fashion with the victim's credit card and a box of coins that belonged to the victim. Additionally, the police located several of the victim's credit cards and receipts from shopping excursions. Officers later found the victim's nine millimeter handgun with the serial number S349 under Ms. Claude's bed. Additionally, they recovered a .50 caliber rifle and several other rifles wrapped in a blanket.

Appellant and Ms. Claude were interviewed several times by the police. During the first interview, Appellant informed the police that he was dating Ms. Claude and living "off and on" at her house. At first, Appellant claimed that he and Ms. Claude were probably at home all day on December 19 and 20, 2005. Later, however, Appellant admitted that he and Ms. Claude bought the coat that officers found in Ms. Claude's home. Appellant denied any knowledge that the credit card used to purchase the coat was stolen. After being informed that the credit card was stolen, Appellant later admitted that he bought some "hot" items from a man in Nashville whose name started with an "L." He described the man as heavyset with braids. The items included some handguns and were in a bag that could have also contained credit cards. Appellant told police that he paid $200 for a .357 chrome gun with a black handle, a semi-automatic weapon, and a brown shotgun. Appellant told police that the guns were under the bed at Ms. Claude's house.

Appellant informed police that he had never met the victim, did not break into the victim's home, and did not kill the victim. Appellant tried to tell police that "L" was probably responsible for the robbery of the victim.

Later, Appellant admitted during an interview that he had been at the victim's house for the purpose of getting guns. Appellant remembered that the victim opened the door wearing shorts or

boxers. According to one version of the story told by Appellant to police, "L" and the victim went to the back of the house to smoke crack. When they returned, "L" placed a gun to the back of the victim's head. There was a struggle, and shots were fired. Despite his description of the events, Appellant claimed that he did not see "L" shoot the victim.

At first, Appellant claimed that the victim was unarmed. Subsequently, Appellant claimed that the victim was armed with a silver .357 revolver with a black handle when he opened the door. Appellant also claimed that "L" fired a weapon two or three times in self-defense and that at least one of the shots hit the victim in the upper chest. Appellant told police he was on the porch at the time the victim was shot but helped "L" get a bag of guns from the house. Appellant claimed to police that he saw "L" take a "big ass rifle" from the victim's house. "L" instructed Appellant to hold onto it so Appellant put the gun under a bed at Ms. Claude's house. The guns also included the revolver that the victim had when he opened the door. Appellant admitted that he handled this weapon. According to Appellant, Ms. Claude drove the van to the victim's house.

During a subsequent interview, Appellant identified a person he claimed to be "L" in a photographic lineup. Detective Downing determined that the man identified by Appellant could not have been with Appellant at the victim's apartment.

After interviewing Appellant, Ronald Allen Hardy also became a suspect in the crime. Police received information that the nine millimeter handgun used to shoot the victim was recovered during a traffic stop in Davidson County from Mr. Hardy's brother Yuri Hardy. The gun was actually stolen from the home of Detective Mike Chastain of the Metro Nashville Police Department. Appellant was presented with a photographic lineup that contained a picture of Mr. Hardy. Appellant denied knowing Mr. Hardy even though police were already aware that the two men knew each other. Mr. Hardy did not match the description of "L."

In his final interview with police, Appellant admitted that he knew Mr. Hardy[2] and that Mr. Hardy and Ms. Claude were also at the victim's house the day of the incident. He maintained that he was not the shooter but admitted that he had also taken a box of coins from the victim.

According to Detective Downing, Appellant changed his story multiple times during the three interviews that were conducted. Detective Downing described Appellant's statements as deceptive but recalled that by the end of the second interview Appellant had implicated himself in the robbery.

Detective Downing opined that the robbery was planned by Mr. Hardy, Appellant, and Ms. Claude as an attempt to steal guns from the victim. After examining the evidence, Detective Downing felt that the first shot that was fired probably hit the couch. As a natural reaction, the victim ducked and attempted to cover his face. While the victim was crouched down, the second shot was fired, hitting the victim in the neck and traveling to his abdomen.

---

[2]In a separate interview that was not played for the jury, Appellant admitted that he and Mr. Hardy stole the nine-millimeter from Detective Chastain's house.

At the conclusion of the jury trial, the trial court submitted the case to the jury for deliberation. The theft charge was not presented to the jury and was eventually nolle prossed by the State. After deliberating, the jury convicted Appellant of first degree murder, felony murder, especially aggravated robbery, aggravated burglary, conspiracy to commit aggravated burglary, and conspiracy to commit aggravated robbery. The trial court merged the felony murder conviction into the first degree murder conviction. The jury sentenced Appellant to life without the possibility of parole for the murder conviction. On the remaining convictions, the trial court sentenced Appellant as a Range I violent offender to twenty-five years for the especially aggravated robbery conviction, six years for aggravated burglary, four years for conspiracy to commit aggravated burglary, and six years for conspiracy to commit aggravated robbery. The trial court ordered the sentences to run concurrently to the life sentence.

After the denial of a motion for new trial, Appellant filed a timely notice of appeal. Appellant argues that: (1) the evidence is insufficient to support his convictions; (2) he was prejudiced by the fact that one judge ruled on pretrial motions and a second judge presided over the trial; (3) the trial court improperly allowed the jury to view the exhibits in the jury room; (4) the trial court erred by denying the motion for a bill of particulars; (5) the trial court erred in admitting a portion of the videotaped interview that discussed Appellant's prior incarceration; and (6) the trial court erred in instructing the jury.

*Analysis*

*Pretrial Motions*

First, Appellant complains that two different judges ruled on pretrial motions and a third judge presided over the trial. Appellant specifically claims that "[h]aving three (3) different judges during the course of the case is highly prejudicial and unfair." The State responds that Appellant has waived the issue for failure to support the issue with argument or citation to authorities. Further, the State points out that Appellant failed to object to this procedure at either of the pretrial hearings or the trial.

We concur in the State's assessment of Appellant's brief in that it fails to cite any authority to support this argument. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Because Appellant has failed to comply with Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Criminal Appeals Rule 10(b), and because there was no objection in the trial court to three judges hearing various proceedings, Appellant has waived this issue. Therefore, this issue is without merit.

*Denial of Motion for Bill of Particulars*

Appellant argues that the trial court improperly denied his motion for a bill of particulars. Specifically, Appellant argues that he "needed this information in order to better understand the case against him" in order to have "fair notice of what he was being called on to defend." Further, Appellant argued that with the bill of particulars he "would have been able to more adequately research possible double jeopardy issues." The State counters by arguing that Appellant has not shown how additional information from a bill of particulars would have changed his defense or that the State somehow withheld information that was beneficial to the defense.

The Tennessee Rules of Criminal Procedure provide that, upon motion of the defendant, a trial court may direct the filing of a bill of particulars. Tenn. R. Crim. P. 7(c). The purpose of a bill of particulars is to provide the defendant with enough information about the charge to prepare a defense, to avoid prosecutorial surprise at trial, and to preserve a plea of double jeopardy. *State v. Campbell*, 904 S.W.2d 608, 611 (Tenn. Crim. App. 1995). A bill of particulars is not meant to be used for the purposes of broad discovery. *State v. Wiseman*, 643 S.W.2d 354, 360 (Tenn. Crim. App. 1982). The standard for evaluating a motion for a bill of particulars is whether it is necessary that the defendant have the particulars sought in order to prepare a defense and to avoid prejudicial surprise at trial. *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984). If the requested information is in the indictment or has been provided by the State in some other satisfactory form, a bill of particulars is not required. *Id.* On appeal from the denial of a bill of particulars, a defendant is required to allege how the lack of a bill of particulars was detrimental to the defense. *See State v. Thomas Wayne Overbay*, No. E1999-00840-CCA-R3-CD, 2000 WL 1246617, at *6 (Tenn. Crim. App., at Knoxville, Sept. 5, 2000), *perm. app. denied*, (Tenn. Apr. 24, 2001). Further, the decision whether to order a bill of particulars lies in the discretion of the trial court, and this Court will not reverse the trial court's denial of a bill of particulars absent a showing that the trial court abused its discretion. *See State v. Stephenson*, 878 S.W.2d 530, 539 (Tenn. 1994).

In the case herein, Appellant requested a bill of particulars prior to trial. At the hearing, the State informed the trial court that it had complied with all of Appellant's requests through the typical discovery process. The matter was continued to a later date. At the next hearing, Appellant renewed his request for a bill of particulars. Counsel for Appellant sought the facts and circumstances of each offense as well as the time and place of each offense in order to evaluate any potential double jeopardy issues. The State explained to the trial court that Appellant had been provided with the nature, time, date, and location of the offenses. At the conclusion of the hearing, the trial court denied the motion because Appellant "failed to establish a proper basis for such motion and . . . the State had furnished sufficient evidence in order for the defendant to prepare adequately for trial."

On appeal, Appellant fails to specify what information was withheld by the State or show how Appellant's defense was hampered by a lack of a bill of particulars. He merely refers to potential, but unspecified double jeopardy issues. The trial court examined Appellant's motion and

denied it on the basis that it failed to establish a proper basis for the motion. We determine that the trial court did not abuse its discretion in denying the bill of particulars. This issue is without merit.

*Admission of Evidence of Prior Incarceration on Videotape*

Appellant next contends that the trial court improperly admitted a portion of a videotape which referenced Appellant's prior incarceration. Specifically, Appellant is referring to a portion of the videotaped interview that was redacted by the State. Prior to trial, the parties agreed that if any evidence subject to Tennessee Rules of Evidence 404 or 405 was going to be introduced there would be a jury out hearing on the matter. As part of this agreement, the State promised to redact portions of the videotaped interviews of Appellant regarding any past convictions or bad acts. At trial, during the viewing of one of the interviews, Appellant referred to knowing a certain person from when he was at "940."[3] The State agreed that the statement in the tape should have been redacted. On appeal, the State contends that Appellant has waived this issue because he failed to pursue it at trial. Moreover, the State contends that "the trial court properly determined that it was not clear from the tape that Appellant was referring to being in jail."

Prior to trial, Appellant filed a motion pursuant to Tennessee Rule of Evidence 404 to prevent the State from referring to Appellant's prior bad acts. Appellant also asked the State to redact the videotaped interview to exclude references to prior incarceration or probation. The State did not object to redacting the tape, and the trial court granted the motion to have the tape redacted.

During the trial, counsel for Appellant requested a jury out hearing during the viewing of the videotaped interview of Appellant. During the interview, Appellant mentioned that he knew a man named "Carlos" from "940." The State admitted that this statement should have been redacted pursuant to the pretrial agreement to redact any portion of the interview that dealt with prior incarceration. Counsel for Appellant stated to the trial court that the nearly two-and-a-half hour videotape was "boring." The trial court announced that it did not hear the reference. Counsel for Appellant announced to the trial court that in exchange for "not asking for a mistrial on what was played, [the State's] not going to call a particular witness in their case in chief" that would have established a potential connection between Appellant and the knowledge of the weapons in the victim's home.

As we begin our analysis, we note well-established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). The general rule is that evidence of a defendant's prior conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Tennessee Rule of Evidence 404(b) permits the admission of evidence

---

[3] Apparently, "940" is a slang term used by many of the inmates to describe the Rutherford County Jail.

of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmts.; *See State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crime, wrong, or act to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

The rationale underlying Rule 404(b)'s exclusion of evidence of a defendant's prior bad acts is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996).

The trial court made a pretrial determination that the tape would be redacted to prevent mention of Appellant's prior incarceration or probation. During trial, the State admitted that it missed a reference to "940" in the tape. Appellant requested a jury out hearing but chose not to pursue the matter further. Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." The failure to object, request a curative instruction or move for a mistrial is typically grounds for waiver of an issue on appeal. *State v. Walker*, 910 S.W.2d 381, 386 (Tenn. 1995). "When a party does not object to the admissibility of evidence, though, the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible.'" *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981)). Appellant brought the matter to the attention of the trial court but failed to request curative action and agreed not to seek a mistrial in return for the State's not calling a witness who could establish Appellant's knowledge of guns in the victim's home. Consequently, because Appellant failed to object to the introduction of the testimony at trial, this issue is waived.

### *Jury Instructions*

Appellant complains that the trial court improperly instructed the jury. Specifically, Appellant argues that the trial court should have charged the jury with facilitation. The State, on the other hand, points out that Appellant failed to make a written request for the instruction at trial and failed to raise the issue in the motion for new trial. Therefore, the State argues, the issue is waived.

In the alternative, the State contends that the failure to instruct the jury with facilitation does not rise to the level of plain error.

Tennessee Code Annotated section 40-18-110 requires the defendant to request lesser included offense instructions in writing at trial in order to subsequently appeal a trial court's failure to instruct on such offenses. Tennessee Code Annotated section 40-18-110 states, in pertinent part:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for a new trial or on appeal." *Page*, 184 S.W.3d at 229. However, the court went on to note that appellate courts were not precluded from reviewing the issue sua sponte under the plain error doctrine. *See id.* at 230.

The record on appeal shows that trial counsel failed to request the lesser included offense jury instruction for facilitation in writing. Additionally, Appellant failed to raise this issue in a motion for new trial. *See* Tenn. R. App. P. 3(e); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). Thus, Appellant has waived this issue on appeal. *See Page*, 184 S.W.3d at 229.

We now address whether it was plain error[4] for the trial court to fail to give a lesser included offense instruction on facilitation, even when Appellant did not properly preserve the issue for appeal. When determining whether plain error review is appropriate, the following five factors must be established:

> "(a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached; (c)
> a substantial right of the accused must have been adversely affected;
> (d) the accused [must not have waived] the issue for tactical reasons;

---

[4] Effective July 1, 2009, Tennessee Rule of Criminal Procedure 52 was deleted in its entirety, and the plain error language was added to Rule 36(b).

and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)).

We acknowledge that facilitation is a lesser included offense of first degree murder when a defendant is charged with criminal responsibility for the conduct of another. *See State v. Rice*, 184 S.W.3d 646, 676 (Tenn. 2006); *State v. Reid*, 91 S.W.3d 247, 299 (Tenn. 2002). Therefore, the trial court erred by failing to instruct the jury with the offense of facilitation. The error in failing to instruct on the offense of facilitation is harmless, however. Our supreme court has held that when a jury convicts on the greater offense to the exclusion of the immediately lesser included offense, the error in failing to instruct will normally be harmless beyond a reasonable doubt. *See State v. Williams*, 977 S.W.2d 101, 105-06 (Tenn. 1998). The trial court instructed the jury on the charged offense of first degree murder and the immediately lesser included offenses of second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. The jury chose to convict Appellant of the greater offense of first degree murder, the most serious charge in the indictment. Therefore, consideration of the trial court's error is not necessary to do substantial justice, and Appellant is not entitled to relief on this issue.

*Jury Viewing Exhibits During Deliberation*

Appellant argues that the trial court erred by allowing the jury to take the exhibits to the jury room during deliberation. Specifically, Appellant argues that "the nature of the exhibits" resulted in "unfair prejudice" because some of the photographs were "of the victim at the crime scene covered in blood." The State argues that the Tennessee Rules of Criminal Procedure provide that a jury is allowed to take exhibits introduced at trial into the jury room. Further, the State argues that the trial court did not abuse its discretion in denying Appellant's pretrial motion to prohibit the jury from viewing trial exhibits during deliberation. The trial court denied the motion, referencing Tennessee Rule of Criminal Procedure 30.1. The trial court concluded that Appellant did not show that the exhibits should be excluded from the jury room but invited Appellant to renew the objection at the conclusion of trial. Appellant made no objection at the conclusion of trial. In *State v. Long*, 45 S.W.3d 611(Tenn. Crim. App. 2000), this Court addressed Tennessee Rule of Criminal Procedure 30.1. We stated:

We are of the opinion that the trial court's actions are governed by Rule 30.1 of the Tennessee Rules of Criminal Procedure, which provides that "[u]pon retiring to consider its verdict the jury shall take to the jury room all exhibits and writings which have been received in evidence, except depositions, for their examination during deliberations, unless the court, for good cause, determines that an exhibit should not be taken to the jury room." Tenn. R. Crim. P. 30.1. The Advisory Commission Comments further provide that the rule is mandatory unless the judge determines that an exhibit should not be submitted to the jury, and suggests that

-10-

appropriate reasons for non-submission are (1) the exhibit would endanger the health and safety of the jurors, (2) the exhibit may be subjected to improper use by the jury, or (3) a party may be unduly prejudiced if the exhibit is submitted. Tenn. R. Crim. P. 30.1, Advisory Comm'n Comments.

*Id.* at 624-25. In the case herein, the trial court applied Rule 30.1 and concluded that allowing the jury to view the introduced exhibits during deliberation was not prejudical, subject to improper use, or a danger to the health and safety of the jurors. We agree. Appellant also failed to object at the conclusion of trial. Appellant has failed to show "good cause" as required by Rule 30.1 for the trial court to exclude the exhibits from the jury. This issue is without merit.

*Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence. Appellant claims there was "no evidence tying the Appellant to the murder of the victim." The State disagrees, arguing that the evidence was sufficient to support the convictions for first degree murder, especially aggravated robbery, conspiracy to commit aggravated robbery, aggravated burglary, and conspiracy to commit aggravated burglary.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

*A. First Degree Murder*

First degree murder is the "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). Tennessee Code Annotated section 39-13-202(d) provides:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d). Therefore, in order to convict Appellant of his indicted offense, the State was required to prove beyond a reasonable doubt that the defendant killed the victim with "premeditation."

Because premeditation entails proof of a state of mind about which there may be no direct evidence, "cases have long recognized that the necessary elements of first-degree murder may be shown by circumstantial evidence." *State v. Brown*, 836 S.W.2d 530, 541 (Tenn. 1992). Premeditation is a question of fact to be determined by the jury. *See State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). And, the jury may infer premeditation from the manner and circumstances of the killing. *See, e.g., State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998); *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *State v. Bordis*, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our courts have enumerated several factors that may support the existence of premeditation, including: a prior relationship that might suggest motive; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; infliction of multiple wounds; preparation before the killing for concealment of the crime; destruction or secretion of evidence of the murder; and the appellant's demeanor before and after the killing, including calmness immediately after the killing. *See State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000); *Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660. *See also State v. Gentry*, 881 S.W.2d 1, 4-5 (Tenn. Crim. App. 1993); *State v. Anderson*, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992).

### B. Felony Murder

Felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. § 39-13-202(a)(2).

### C. Especially Aggravated Robbery

Especially aggravated robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear," T.C.A. § 39-13-401(a), "(1) accomplished with a deadly weapon; and (2) where the victim suffers serious bodily injury." T.C.A. §

39-13-403(a)(1)-(2). "'Serious bodily injury' means bodily injury which involves: (a) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." T.C.A. § 39-11-106(a)(34). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." T.C.A. § 39-11-106(a)(5).

## D. Aggravated Burglary

Aggravated burglary is the burglary of a habitation. T.C.A. § 39-14-403(a). Burglary is committed when a person "without the effective consent of the property owner . . . [e]nters a building other than a habitation . . . not open to the public, with intent to commit a felony, theft or assault." T.C.A. § 39-14-103. Theft of property is committed when "with intent to deprive the owner of property, the person knowingly obtains or exercised control over the property without the owner's effective consent." T.C.A. § 39-14-103.

## E. Conspiracy to Commit Aggravated Robbery and Conspiracy to Commit Aggravated Burglary

Conspiracy is proven when a defendant and at least one other person "each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense." T.C.A. § 39-12-103(a). The agreement necessary to establish a conspiracy does not need to "be formal or expressed, and it may be proven by circumstantial evidence." *State v. Vasques*, 221 S.W.3d 514, 522 (Tenn. 2007) (quoting *State v. Pike*, 978 S.W.2d 904, 915 (Tenn. 1998)).

Appellant was convicted of conspiracy to commit aggravated robbery and conspiracy to commit aggravated burglary. Aggravated robbery is robbery: "(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it would be a deadly weapon; or (2) Where the victim suffers serious bodily injury." T.C.A. § 39-13-402. Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401.

The proof, as introduced at trial, established that Appellant, along with Mr. Hardy and Ms. Claude, planned to commit a robbery and burglary of the victim. During the robbery, one of them shot and killed the victim, who was found dead in his home on December 20, 2005, with a single gunshot wound to the neck. Appellant and Ms. Claude used several of the victim's credit cards to make purchases at Hickory Hollow Mall after the victim's death. Ms. Claude signed the victim's name to the credit card receipts but provided her own driver's license as identification. The purchases included an oversized leather jacket for Appellant.

Appellant was found by the police at Ms. Claude's residence hiding behind a door in the bathroom. When the residence was searched, investigators found a number of items that were stolen

from the victim's residence, including a box of coins with the victim's name and address on it as well as several guns and the credit cards that were used to make purchases.

Appellant initially denied any involvement in the crime. However, Appellant eventually admitted during an interview that he and Mr. Hardy had gone to the house to get some guns and that Ms. Claude was the driver of the car. According to Appellant, he did not fire the shot that killed the victim. The stolen gun that killed the victim was later recovered from Mr. Hardy's brother during a traffic stop in Davidson County.

We determine that the evidence was sufficient to convict Appellant of first degree murder, conspiracy to commit aggravated robbery, conspiracy to commit aggravated burglary, especially aggravated robbery, aggravated burglary, and felony murder. The jury could have inferred premeditation based solely on the circumstances surrounding the death of the victim. *See State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000); *Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660. *See also State v. Gentry*, 881 S.W.2d 1, 4-5 (Tenn. Crim. App. 1993); *State v. Anderson*, 835 S.W.2d 600, 605 (Tenn. Crim. App. 1992). Appellant admitted that the three perpetrators went to the victim's home to steal some guns and that the victim was unarmed. The testimony from the medical examiner indicated that the victim was likely trying to shield himself after the first shot was fired when he was killed. Appellant did not render aid to the victim, and the three left with the stolen items that were eventually recovered from Ms. Claude's residence. Even though Appellant vehemently denied shooting the victim, the jury was charged with the theory of criminal responsibility. A person is criminally responsible "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. *See State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). Appellant "associated himself with the venture, act[ed] with knowledge that an offense is to be committed, and share[d] in the criminal intent of the principal in the first degree." *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). Again, the evidence was sufficient to convict Appellant of all the offenses charged in the indictment. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-14-