**STATE of Tennessee, Appellee,**

**v.**

**Kurt SANDERS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 18, 1992.

Permission to Appeal Denied by Supreme Court Nov. 2, 1992.

Dianne Turner (on appeal) and David Collins (at trial), Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, David M. Himmelreich, Deputy Atty. Gen., Victor S. Johnson, III, Dist. Atty. Gen. and Grant Glassford, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

PEAY, Judge.

The defendant was convicted of robbery by use of a deadly weapon and of aggravated kidnapping. For these offenses he was sentenced as a Range I standard offender to concurrent terms of eight years and fifteen years, respectively.

The defendant brings this appeal as of right, presenting four issues for review. In his first issue he contends that the trial court erred in failing to suppress the identification of him from a photo lineup. In his second issue he complains that the trial court erred in failing to grant a new trial upon his presentation of exculpatory evidence which had not been revealed until after his trial. In his third and fourth issues he complains that the evidence is insufficient as a matter of law to support the convictions for armed robbery and aggravated kidnapping. After considering the record in this cause, we find the defendant's issue as to his aggravated kidnapping conviction to be meritorious. Accordingly, his conviction for kidnapping is reversed and dismissed; however, all other issues are found to be without merit.

During the early morning hours of May 14, 1988, Doug Springer, the manager of Applebee's Restaurant, locked the restaurant and proceeded across the street to his car which was parked in the Father Ryan High School parking lot. Although he had closed the restaurant for the evening, Kyle, Jeanne, and Jerome Marquardt were in the restaurant performing their nightly cleaning duties. Springer testified that as he had approached his vehicle carrying a bank deposit bag, a masked individual pointing a pistol had come towards him from behind a bus. In addition, Springer stated that he had dropped his bank bag and that the masked person had ordered him to return to the restaurant. Inside the restaurant Springer told Jeanne Marquardt to get her family and take them to the office. The gunman then ordered Springer to go to the office also. On the way Jerome Marquardt observed a white male with a weapon but testified this individual had not been wearing a mask. After all subjects were in the office, they were ordered to kneel or get on the floor. A second white male with a gun then entered the room, and using duct tape, he bound each of the Marquardts' hands behind their backs. At this point Springer was ordered to open the safe, and after he complied, his hands were also bound behind him. According to Springer's testimony approximately five thousand dollars ($5,000) in cash was taken from the safe and the bankbag which he had dropped in the parking lot.

After the robbers had obtained the money, they instructed the victims to remain on the floor for at least thirty minutes before notifying the police. They also directed the

victims to tell the police that they had been robbed by two black males. Lastly, one of the robbers threatened Springer, stating that he knew where Springer lived. At least thirty minutes after the robbers had left, the victims were able to escape from their bindings and did, in fact, call the police.

Over a year later Kevin Edwards was arrested on unrelated charges and confessed to several burglaries in the Nashville area. While doing so, he acknowledged his participation in the robbery at issue here and stated that the defendant had been the second individual involved. Edwards further explained that the defendant had been the person who had confronted Springer in the parking lot and had escorted him back to the restaurant. In addition, Edwards admitted to having worn a mask during the robbery because he had previously worked at Applebee's and would have been recognized by Springer.

Although more than a year had passed when Jerome Marquardt was shown a photographic lineup by police officers, he immediately picked the defendant from the photo array. He also positively identified the defendant at the trial. While only Jerome Marquardt was able to identify the defendant, all four victims of the incident testified to basically the same facts.

■ In his first issue the defendant complains that the trial court erred in failing to suppress the identification from the photo lineup. He alleges that this suppression would have been appropriate as the lineup was suggestive and unreliable. However, he has failed to cite authority in support of his argument; thus, this issue is waived. Rules of the Court of Criminal Appeals of Tennessee 10(b); *State v. Tony Bryant*, C.C.A. No. 288, Bradley County, 1991 WL 59370 (Tenn.Crim.App. filed April 15, 1991, at Knoxville); *State v. Killebrew*, 760 S.W.2d 228, 231 (Tenn.Crim.App.1988).

■ Even if this issue were not deemed to have been waived, we would have found it to be without merit. In conducting our review, we are bound by the trial judge's findings unless the evidence preponderates against them. The lower court concluded that the photographic array was not suggestive, and the evidence in this case does not preponderates against this finding. *State v. Yarbro*, 618 S.W.2d 521, 524 (Tenn.Crim.App.1981). After examining the photographic lineup which was introduced into evidence, we note that the exhibit contained photographs of six white males of approximately the same age. The defendant's photograph was not distinctive from the others because of hair length or the presence or absence of a beard. As such is true, he has failed to make the required showing that the identification was unreliable. *See State v. Shanklin*, 608 S.W.2d 596, 598 (Tenn.Crim.App.1980).

■ In his second issue the defendant contends that the trial court should have granted his request for a new trial because of newly discovered exculpatory evidence. According to the defendant, Jerome Marquardt told Kyle that one of the assailants had blue eyes.[1] Kyle allegedly passed this information on to the police and added that at some point after this crime he himself had observed a person in a restaurant who had appeared to have the "defendant's eyes". As he continued staring, this person seemed to become nervous. The individual then put a newspaper in front of his face and eventually left the restaurant driving a blue Chevrolet automobile with a Kansas license plate. While this information was written in the officer's report and was available to the district attorney at the time of discovery, it was not revealed to the defendant until after his conviction.

The trial court found that Jerome Marquardt did not relate to anyone that the defendant had blue eyes, and the transcript of the evidence supports that finding. Jerome testified that he had never said that the defendant's eyes were blue, and Kyle confirmed this. Kyle further testified that he was the one who had thought that one of the robbers had blue eyes. Since the proof is clear that any reference to blue eyes was made by Kyle, this evidence would have been inadmissible for impeach-

[1] The record indicates that the defendant's eyes are brown.

ment purposes as to Jerome's testimony. While it might have been used in the cross-examination of Kyle, the record is clear that he consistently testified that he was unable to identify the defendant. Even if the information contained in the officer's report had been admitted, we agree with the trial court finding that this information would not likely have changed the result of the trial. *See State v. Goswick*, 656 S.W.2d 355, 359 (Tenn.1983).

■ In his third issue the defendant contends that the evidence was insufficient to support his conviction for aggravated kidnapping. More specifically he contends that the issue is whether the defendant's convictions for both armed robbery and aggravated kidnapping should be allowed when both arose out of a single criminal episode.

At the outset we note that there was proof put before the jury as to each element of each offense. Since each crime contains different elements and neither offense is included in the other, there was no double jeopardy violation. *See State v. Black*, 524 S.W.2d 913, 920 (Tenn.1975).

In addressing claims similar to this defendant's, our Supreme Court has stated that "[t]he real issue involves the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony such as robbery or rape". *State v. Anthony*, 817 S.W.2d 299, 300 (Tenn.1991). Thus, we will attempt to summarize the applicable rules from *Anthony* and then apply those rules to the factual situation in this case.

Through *Anthony* the Court stated that the test is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction". *Anthony*, 817 S.W.2d 299, 306. The Court went on to explain that "one method of resolving this question is to ask

whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of the robbery itself' ". *Anthony*, 817 S.W.2d 299, 306. Finally, the Court concluded that the kidnapping statute is to be narrowly applied, "so as to make its reach fundamentally fair and to protect the due process rights of every citizen, even those charged with robbery, rape or the like". *Anthony*, 817 S.W.2d 299, 306.

Having established the standard, the Court then applied it to the facts surrounding two different robberies. In doing so, Justice Daughtrey stated that "[t]he test is not whether the detention was an 'integral part or essential element' of the robbery, but whether it was 'essentially incidental' to that offense". *Anthony*, 817 S.W.2d 299, 307.

At the time of hearing on the motion for a verdict of acquittal in this case, the State took the position that the victim had been kidnapped when he was required, at gunpoint, to return from the parking lot to the inside of the restaurant and when all of the victims' hands were bound with duct tape.[2] However, after reviewing the record, we find that these acts were "essentially incidental" to accomplishing the armed robbery and to facilitating the perpetrators' escape. While binding the victims' hands and leaving them at the restaurant may have increased the risk of harm, we have determined that this risk was not substantially greater than that necessarily involved in the robbery. For these reasons the defendant's conviction for aggravated kidnapping must be reversed and dismissed.

■ Through his final issue the defendant complains that the evidence was insufficient to support his conviction for armed robbery. In support of this allegation, he contends that the codefendant's testimony was not sufficiently corroborated by that of Jerome Marquardt. The defendant cites no authority to support his complaint or his conclusion; therefore, this issue is waived. Rules of the Court of Criminal Appeals of

---

2. Since the transcript of the trial does not include the argument of counsel, we cannot determine the State's initial theory as to the facts supporting the charge of kidnapping.

Tennessee 10(b). Even if not waived, this issue would have been found to be without merit. The testimony of Jerome Marquardt alone satisfies the requirement of independent proof that a crime has been committed and that the defendant is implicated in that crime. The question of whether sufficient evidence has been set forth to corroborate an accomplice's testimony is for the determination of the jury. *Clapp v. State*, 94 Tenn. 186, 30 S.W. 214, 217 (1895); *Nease v. State*, 592 S.W.2d 327, 329 (Tenn.Crim.App.1979).

For the reasons herein stated, the defendant's conviction for aggravated kidnapping is reversed and dismissed; however, his conviction for armed robbery is affirmed.

TIPTON, J., and JOE G. RILEY, Jr., Special Judge, concur.