IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 4, 2005

**STATE OF TENNESSEE v. ODESSA POPE**

**Appeal from the Circuit Court for Dyer County**
**No. C04-184   Lee Moore, Judge**

_____

**No. W2004-02939-CCA-R3-CD  - Filed January 6, 2006**

_____

The Dyer County Grand Jury indicted the defendant for attempting to obtain a controlled substance by misrepresentation fraud, forgery, deception or subterfuge. Following a jury trial on July 28, 2004, the defendant was found guilty as charged. The trial court sentenced the defendant to four years as a Range II multiple offender. The defendant filed a notice of appeal. On appeal, the defendant argues that the evidence was insufficient to support her conviction and that the trial court erred in allowing the prosecution to cross-examine her regarding her prior convictions contrary to Rule 609 of the Tennessee Rules of Evidence. We find that there was sufficient evidence and the trial court did not err in allowing the entry of the prior convictions into evidence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ALAN E. GLENN, JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Odessa Pope.

Paul G. Summers, Attorney General and Reporter; Brian C. Johnson, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Emily Anderson and Sarah Giles were working at the Long and Gibson Pharmacy in Dyersburg on February 12, 2004. On that day, the defendant, who was a "regular customer," presented a prescription for 120 tablets of Lortab to Ms. Anderson. The prescription was from the pad of Dr. Mulay, who practiced in Dyersburg. The prescription was made out to a Glenda Hill of Union City. Ms. Anderson and Ms. Giles became suspicious because an instruction for the

prescription to be "dispense[d] as written" was included as a notation. Usually, due to the expense, a physician allows for a generic to be substituted for a narcotic drug, such as Lortab.

The pharmacist also found it unusual and called Dr. Mulay's office. A copy of the prescription was also faxed to Dr. Mulay's office. After receiving the phone call and the fax, Aubreen Marotti, Dr. Mulay's secretary, checked Dr. Mulay's patient records and found no patient named Glenda Hill. She also maintained that Dr. Mulay would never prescribe that many tablets of Lortab at one time. Ms. Marotti also stated that the signature on the faxed prescription was not that of Dr. Mulay. In addition, the address on the prescription was that of Dr. Mulay's Union City office which had been closed since September of 2003.

Ms. Marotti and Dr. Mulay called the Dyersburg police. Officer Russell Burrow went to Dr. Mulay's office. Ms. Marotti spoke with Officer Burrow, who then proceeded to the pharmacy, which was across the street from Dr. Mulay's office. The defendant had already left the pharmacy. Ms. Anderson and Ms. Giles gave a description of the defendant to Officer Burrow and also told him her date of birth. Officer Burrow obtained a driver's license photograph of the defendant and Ms. Anderson identified the defendant from the picture as the person who had attempted to fill the Lortab prescription in question. An arrest warrant was served on the defendant on February 17, 2004.

The defendant maintained that she was in Jackson the day of the incident. She stated at trial that she went to see a Dr. Yeates in Jackson who wrote her a prescription for various medications. She stated that she had the prescriptions filled that day at Walgreen's in Jackson. A defense witness, Brandi Walley, testified that the defendant was with her until about 1:00 p.m. on the day in question. She stated that her son and the defendant left to go to Jackson about 1:00 p.m. Bryan Walley, Ms. Walley's son, testified that he was in Jackson with the defendant on the date of the offense. On cross-examination, Mr. Walley testified that he had been incarcerated and been to rehabilitation for abuse of both marijuana and cocaine. He stated that he did not have a problem with pills. As a rebuttal witness, the State called Officer Jim Porter of the Dyersburg Police Department who testified that the call concerning the forged prescription came in at 1:31 p.m.

Based on the foregoing the defendant was convicted of attempting to obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.

## ANALYSIS

On appeal, the defendant argues two issues: (1) the evidence was insufficient to support her conviction; and (2) the trial court erred in allowing into evidence the defendant's prior convictions for obtaining a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.

### Sufficiency of the Evidence

Although the defendant's brief has a heading arguing that there was insufficient evidence to support her conviction, her brief does not actually present an argument for this issue. The argument

in her brief refers solely to her second issue regarding the entry of her prior convictions into evidence. However, Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also State v. Sanders, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Even though this issue is technically waived, we have decided to address the defendant's argument on its merits.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The defendant was convicted of attempting to obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge. Under Tennessee Code Annotated section 53-11-402(a)(3), "[i]t is unlawful for any person knowingly or intentionally to: . . . (3) [a]cquire or obtain, or attempt to acquire or attempt to obtain, possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." A defendant "knowingly" commits an offense when she "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). A defendant "intentionally" commits an offense when she "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). Criminal attempt is defined as, a person "acting with the kind of culpability

otherwise required for the offense," and either, "(2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or (3) [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense . . . ." Tenn. Code Ann. § 39-12-101(a)(2) & (3).

The evidence, when viewed in a light most favorable to the State, showed that the defendant was a regular customer at the Long and Gibson Pharmacy. On the date in question, the defendant gave a prescription made out to Glenda Hill for Lortab to the clerks at the pharmacy. The prescription did not allow for substitution with a generic, which is unusual for such an expensive drug. The clerks then faxed the prescription to the doctor's office from whom the prescription came. After the doctor's office received the fax, that office informed the pharmacy clerks that the prescription was on a prescription slip that listed an out of date address of the doctor, and the signature on the prescription was not the doctor's. In addition, the person listed as the patient on the prescription was not a patient of the doctor.

We conclude that based upon this evidence a reasonable jury could have found the defendant guilty of all the above elements of attempting to obtain a controlled substance by fraud. Therefore, this issue is without merit.

### Evidence of Prior Convictions

The defendant argues that the trial court erred in allowing the State to cross-examine her regarding her prior convictions for obtaining a controlled substance by fraud. The defendant argues that this line of questioning was in violation of Rule 609 of the Tennessee Rules of Evidence.

Tennessee Rule of Evidence 609 states that the credibility of a witness may be attacked by evidence of prior convictions if certain prerequisites are met. First, the conviction must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Secondly, if the witness to be impeached is a criminal defendant, the State must give notice prior to trial of its intent to use the conviction for impeachment. Tenn. R. Evid. 609(a)(3). Finally, upon request, the court must determine that the probative value of the prior conviction on the issue of credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 609(a)(3). On appeal the trial court's ruling on the admissibility of such evidence is reviewed under an abuse of discretion standard. State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003).

Thus, Tenn. R. Evid. 609(a)(3) grants special treatment to criminal defendants when it comes to impeachment with prior convictions. The reason for this is obvious. There is a concern that if a jury knows of a defendant's previous criminal record, the panel might conclude that the defendant has a propensity to commit crimes and convict on this basis rather than on the evidence of the charges before them. This concern is greatly heightened when all or some of the prior convictions

are for identical crimes as those for which the defendant is on trial, as in this case. <u>Waller</u>, 118 S.W.3d at 373 (Tenn. 2003). Therefore, Rule 609(a)(3) serves as a screening mechanism whereby prior convictions are admitted for impeachment when the potential for undue prejudice is outweighed by the probity of the conviction on the question of the defendant's credibility.

Prior to trial, the State filed a Notice of Impeaching Convictions and Intent to Seek Enhanced Punishment. The defendant made no response to this notice. Then at trial, the following exchange occurred upon the State's cross-examination of the defendant:

Q.    Had you ever had Lortab before?
A.    On occasion.
Q.    In the past?
A.    Sir?
Q.    In the past?
A.    Yes, sir. I've had dental work done. I've had teeth pulled. I had a cyst removed. It's a medication that's prescribed occasionally. It's not something that you –
Q.    Have you regularly taken pain medications?
A.    No, sir. I can't say on a regular basis.
Q.    Have you ever had a problem with pain medication?
A.    No, sir.
Q.    Ever had a problem obtaining pain medication?
A.    I don't think that obtaining pain medication seems to be a problem in this area. They run pretty rampantly. It's a big problem in this area. That's why I've got myself involved with a halfway house facility. Actually, that's how I met Mr. Davis. He had just left JACOA and I was trying to get him to enter a halfway house that I helped to run in Obion County, that I am on the Board of –
Q.    Ma'am?
A.    The Board of Directors.
Q.    Because of just civic involvement?
A.    Yes, sir.
Q.    Again, my question was have you ever had a problem obtaining pain medication?
A.    No, sir.
Q.    And you've never had a problem with pain mediation?
A.    No, sir.
GEN. BIVENS:    Your Honor, may we approach?
THE COURT:    Sure. (Whereupon, a bench conference was held . . . .)
GEN. BIVENS:    She's got two prior convictions for attempting to obtain it by fraud, Your Honor.
[Defense attorney]:    His question was, "Have you ever had a problem obtaining," and she said no.
GEN. BIVENS:    No, sir. I asked her if she ever had a problem with it and she said no, and then I asked her if she ever had a problem with obtaining it and she said no.
[Defense attorney]:    I don't think he can go there, Judge.

GEN. BIVENS: She opened the door on it with her answer because she has prior convictions for attempting to obtain controlling substances by fraud.

THE COURT: [Defense attorney] –

GEN. BIVENS: [Defense attorney] and I looked at that and he agrees it's obtaining a controlled substance by fraud.

THE COURT: What if her answer had been yes?

GEN. BIVENS: On what? That she'd had any drug problems? I asked about anywhere else, Your Honor.

THE COURT: It goes to her credibility as a witness.

[Defense attorney]: Well, what he's getting at here, he'd asked her had she ever had any problem getting pain medication, and she says no.

GEN. BIVENS: And that's my second question, Your Honor. My first question was did she have a problem and she brought up about being on the Board of this place.

THE COURT: It goes to her credibility as a witness. You may proceed.

(Said bench conference having been completed, the following proceedings were had . . . .)

Q. (By General Bivens) Ms. Pope, you've never had a problem obtaining prescriptions for controlled substances before?

A. You can go to the doctor and get pain medication.

Q. Ma'am, were you convicted in Obion County Circuit Court –

A. Yes, sir.

Q. – on August 7th, 2000, for obtaining a controlled substance by fraud?

A. Yes, sir. I was.

Q. And were you convicted on June 19th, 2001 in Dyer County –

A. Yes, sir.

Q. – for obtaining a controlled substance by fraud?

A. Yes, sir.

Q. And you've never had a problem with a controlled substance?

A. Sir, that was more of a greed thing.

Q. But you never had a problem obtaining the drugs legally?

A. I don't really understand the question. Yes, sir. I am guilty of doing things in my past.

Q. What were the drugs that you attempted to obtain on these two prior occasions?

A. Vicodin.

Q. Which is a – same thing as Lortab?

A. Yes, sir. It is.


The defendant argues that the trial court erred in allowing the State to cross-examine her regarding prior convictions identical to the charge in the case sub judice. Although, as noted earlier, the potential for unfair prejudice is greater when impeachment of the accused is sought to be accomplished using prior convictions for offenses which are identical, such impeachment is not barred as a matter of law. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. Ap. 1997). Instead, the trial court must, upon request, conduct a hearing wherein the relevance of the prior convictions to

the defendant's credibility is weighed against its potential for unfair prejudice. Tenn. R. Evid. 609(a)(3); <u>Waller</u>, 118 S.W.3d at 371, 373.

The instant case presents a perfect storm under Rule 609(a)(3). The crime of fraudulently attempting to obtain prescription drugs is a Class D felony and, therefore. punishable by more than one year of imprisonment. See Tenn. Code Ann. § 53-11-402(b)(1), Tenn. Code Ann. § 40-35-11(b)(4). Moreover, the crime is defined by its use of fraudulent and deceptive means in an attempt to obtain prescription drugs and, thus, inherently involves dishonesty and false statements. Such a prior conviction has enormous probity with respect to the defendant's credibility.

On the other hand the prior convictions used to impeach the defendant's credibility are identical to the offense which is the subject of this appeal. There is therefore a heightened potential for unfair prejudice with regard to the jury's deliberation with respect to the substantative issue of the defendant's guilt.

In the instant case the State sent the defendant's attorney notice of its intent to use prior convictions to impeach the defendant's credibility should she testify. The defendant never requested a full hearing on the issue and instead the entire issue was decided at a brief bench conference requested by the assistant district attorney rather than given the careful consideration envisioned by our supreme court. <u>Waller</u>, 118 S.W.3d at 373.[1] At that bench conference the State argued that the defendant opened herself up to impeachment with the prior convictions by denying she had a problem with prescription pain medication or any problem obtaining them. Clearly, this is not the case since she had twice before been convicted for fraudulently attempting to obtain pain medications. Repeatedly being foiled by the authorities in an attempt to obtain pain medication by fraud would seem to indicate a problem getting the drugs. Moreover, the State's case was very strong and, therefore, the likelihood that the jury would have to rely on the prior convictions to conclude that the defendant was guilty is diminished from any unfair prejudice that might be precipitated in a closer case.

Given the circumstances outlined above and our circumscribed standard of review, we hold that the trial court did not abuse its discretion in allowing the State to impeach the defendant's credibility with her prior convictions.

---

[1] The State argues that the failure of the defendant to request a full hearing waives this issue on appeal. <u>See</u>, Tenn. R. App. P. 36(a). Certainly the practice of requesting a hearing and having the issue determined after careful consideration is preferable to a brief bench conference. However, the trial court did rule on the issue, thus we decline to apply the waiver rule.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE