# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 22, 2010

## STATE OF TENNESSEE v. CHRISTOPHER JARROD ALEXANDER

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-100     Mark J. Fishburn, Judge**

---

**No.  M2009-01840-CCA-R3-CD - Filed September 29, 2010**

---

Appellant, Christopher Jarrod Alexander, was convicted by a Davidson County Jury of robbery.  As a result, the trial court sentenced Appellant as a Range II, multiple offender, to a sentence of ten years.  After the denial of a motion for new trial, Appellant filed an untimely notice of appeal.  The timely filing of the notice of appeal was waived.  On appeal, the following issues are presented for our review: (1) whether the evidence was sufficient to convict Appellant of robbery; (2) whether Appellant's sentence is excessive; and (3) whether the trial court erred by refusing to grant an alternative sentence.  After a review of the record, we conclude that the evidence supports the conviction and that the trial court properly sentenced Appellant.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Mark A. Kovach, Nashville, Tennessee, for the appellant, Christopher Jarrod Alexander.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On September 26, 2007, Angela Archer was asleep on the couch of her apartment in Nashville, Tennessee. She was awakened at approximately 12:30 or 12:45 p.m. when her front door was kicked in by two men. The men entered her apartment and ordered her to "get up." One of the men was holding a gun. The man with the gun pointed it at Ms. Archer. They told her to "get on the ground" and asked her for money. The men told Ms. Archer that the were "going to kill" her if she did not comply with their demands.

Ms. Archer went into the kitchen and retrieved a wooden box where she kept her cash. One of the men took the cash. The men then told her to get back "on the ground." One of the men went into Ms. Archer's bedroom to look for more money. She told the men that she had given them all of her money already. The man that went back to the bedroom told the other perpetrator to knock Ms. Archer out so she "wouldn't look at them anymore." Ms. Archer was not injured. In fact, the only time she was touched by either man was when they grabbed her from the couch and put her on the floor.

The men were inside the apartment for less then ten minutes and were not wearing masks. When the men left Ms. Archer's apartment, they told her not to leave or they would shoot her. The men took Ms. Archer's two cell phones as well as her pocketbook.

Ms. Archer waited for a few minutes before she went to another apartment to borrow a phone to call the police. Phillip Stafford, a maintenance man working at an apartment on the bottom level, heard Ms. Archer exclaim that she was "robbed" and needed assistance, so he dialed 911.

Earlier, Mr. Stafford noticed a car parked outside that "wasn't supposed to be there." He described an older model Cutlass with the phrase "Cut Dog 442" painted on the bottom of the door in large black letters. Mr. Stafford was passed on the steps by two men running up the steps. They were carrying a purse. Mr. Stafford knew that "something wasn't right." Shortly thereafter, he heard the victim scream. The men got into the Cutlass and sped off at a high rate of speed.

When the police arrived, Ms. Archer was interviewed. Ms. Archer was able to provide a description of the intruders and after viewing a photographic lineup identified Appellant as the robber with the gun. Ms. Archer was "very certain" about her identification

at that time. At a later interview, Ms. Archer had trouble deciding between two photographs on the lineup sheet.

The police received information about the robbery. Officer Troy Gossett of the Metropolitan Nashville Police Department got a description of the Oldsmobile Cutlass and was informed that the car was at a hotel on Wallace Road. The car was registered to Appellant. Eventually, the men left the hotel in the car. The car was pulled over by police. Appellant was driving. He was placed under arrest. A cell phone was found on the floorboard. It belonged to Ms. Archer. Officer Gossett also found "one or two cell phones" on Appellant's person when he was patted down for weapons after his arrest.

Appellant was indicted in January of 2008 by the Davidson County Grand Jury for one count of aggravated robbery. At trial, Ms. Archer testified about the robbery and also admitted that she had two prior convictions for burglary. She testified that she burglarized her mother and stepfather. Ms. Archer identified Appellant at trial and recalled that she positively identified Appellant at the preliminary hearing. Mr. Stafford also identified Appellant as the man he saw that night, but he was not 100% certain.

Lisa Angel, a court reporter, testified at the trial. She was acting in her official capacity as a court reporter at a hearing on October 23, 2008, where Appellant testified that he knew the victim and that "they had had sex before and that they had seen each other for a couple of months or something." Appellant testified that he could not recall any distinguishing marks or tattoos on Ms. Archer's body. In rebuttal, Ms. Archer testified that she got seven tattoos between 2002 and 2006, including one on each arm.

At the conclusion of the jury trial, Appellant was convicted of the lesser included offense of robbery. The trial court held a sentencing hearing to determine the length and manner of service of the sentence. At the sentencing hearing, the trial court sentenced Appellant to ten years as a Range II, multiple offender. The trial court denied an alternative sentence.

Appellant filed a motion for new trial. The trial court denied the motion. Appellant then filed an untimely motion for new trial. This Court waived the timely filing of the notice of appeal on motion of Appellant. On appeal, Appellant challenges both his conviction and sentence.

*Analysis*

*Sufficiency of the Evidence*

On appeal, Appellant argues that the evidence is insufficient to support his conviction for robbery. Specifically, Appellant contends that Ms. Archer's identification of Appellant was "fundamentally unreliable and suspect" in light of her admission that "one or multiple . . . investigating officers had identified the Appellant to [Ms. Archer] as the person who in fact had robbed her prior to her [identification of Appellant during] her testimony at the preliminary hearing. Further, Appellant claims that Mr. Stafford's identification was unreliable because he was only "sixty to seventy percent sure that the person he identified in the photo array lineup" was the robber. The State, on the other hand, contends that the jury resolved the question of fact as to Appellant's identity against him and the evidence supports the jury's determination.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a).

-4-

Appellant argues that because the witnesses were unable to identify him without question, the evidence is insufficient. We agree with Appellant that the identity of the perpetrator is an essential element of any crime. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). However, the identification of the defendant as the person who committed the crime is a question of fact for the trier of fact. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Radley*, 29 S.W.3d 532, 536 (Tenn. Crim. App. 1999) (citing *Strickland*, 885 S.W.2d at 87-88). A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. *See State v. Hill*, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); *Strickland*, 885 S.W.2d at 87.

The proof at trial established that Ms. Archer was, at first, unsure of the identity of the robbers. Ultimately, she picked Appellant out of the photographic lineup. Ms. Archer explained that the identification was made difficult by the fact that Appellant did not have "braids" in the photograph. Appellant was also identified by Mr. Stafford. However, Mr. Stafford admitted that he was only 60 to 70 percent sure of the identification. Moreover, there was other testimony in addition to the identifications that pointed to Appellant's guilt. The car described by Mr. Stafford was the car Appellant was driving when he was arrested. Further, one of the victim's cell phones was found in the back floorboard of Appellant's car when he was arrested. The evidence is more than sufficient to support the verdict. Appellant is not entitled to relief on this issue.

*Sentencing*

Appellant next argues that the trial court improperly sentenced him to the maximum sentence of ten years and erred by denying an alternative sentence. The State insists that the trial court properly sentenced Appellant.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id*. at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant

bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue in September of 2007, therefore, the 2005 amendments to the sentencing act apply to our review of his sentencing. The 2005 amendments to the sentencing act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[T]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). After a review of the transcript from the

sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46.

The trial court applied enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1). Appellant does not contest the application of this enhancement factor. Further, the presentence report indicates that Appellant has at least four felony convictions and "a number of misdemeanor convictions and other arrests." The trial court also applied enhancement factor (13), that Appellant was "released on probation" at the time of the offense. T.C.A. § 40-35-114. Appellant does not challenge the application of this enhancement factor. In fact, Appellant admitted that he was on probation at the time of the offense during his testimony at the sentencing hearing.[1] The trial court also applied enhancement factor number (9), that "[t]he defendant possessed or employed a firearm . . . during the commission of the offense." T.C.A. § 40-35-114(9). Appellant does not challenge the application of this enhancement factor. Further, the victim testified that Appellant used a gun during the robbery. Lastly, the trial court applied enhancement factor (2), "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors." T.C.A. § 40-35-114(2). Appellant argues that this enhancement factor was "not supported by the evidence" because nothing in the record indicates that "Appellant led anyone." To the contrary, during the sentencing hearing, Appellant "accept[ed] responsibility" for the robbery. Further, the trial court determined that the "evidence is clear that there were two people involved, and by his own admission, he takes full responsibility for it, so we'll let him do that." The record supports the existence of each applied enhancement factor and reflects that the trial court considered all the proper criteria in sentencing, as well as stating the reasons for the sentence on the record. The trial court's imposition of a ten-year sentence is affirmed. Appellant is not entitled to relief on this issue.

Appellant also argues that the trial court improperly denied alternative sentencing. Appellant's argument with regard to this issue consists merely of multiple statements of fact without any argument or citation to authority. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals

---

[1] Appellant, in his brief, states that the trial court applied enhancement factor (8), that Appellant "failed to comply with conditions involving a release into the community." T.C.A. § 40-35-114(8). While the trial court discusses Appellant's past failures at probation, the trial court clearly indicated during the hearing that it was applying "number 13. . . ; he was released on probation at the time of this offense."

Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Appellant fails to cite any authority to support his argument. Despite the waiver, we chose to address the issue.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders:

> [A]nd who is an especially mitigated offender or standard offender convicted of a Class C D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. Appellant, as a Range II, multiple offender, is not a "favorable candidate" for an alternative sentence. T.C.A. § 40-35-102(6). Appellant was, however, eligible for probation. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a) (2006).

In addition to not qualifying for favorable status, the presentence report shows that Appellant was on probation at the time he committed the offense in question. The presentence report also shows, as noted by the trial court, that Appellant has violated probation on "two felony sentences twice each" and has been on probation "at least four other times and [he] didn't even come close to successfully completing any of those probations." Clearly, his history of failed probation attempts supports a denial of alternative sentencing. *See* T.C.A. § 40-35-102(6)(C).

We have reviewed the record on appeal and find that the trial court considered the sentencing principles and all pertinent facts in the case, therefore, there is a presumption of

correctness in the findings of the trial court. There is ample support for the denial of probation or another form of alternative sentencing with regard to Appellant. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE