# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs May 3, 2011

## STATE OF TENNESSEE v. MARIET L. PATRICK

**Appeal from the Circuit Court for Dyer County**
**No. 08-CR-71      Russell Lee Moore, Jr., Judge**

**No. W2010-02074-CCA-R3-CD  - Filed July 28, 2011**

Following a jury trial, the Defendant, Mariet L. Patrick, was convicted of evading arrest in a motor vehicle, a Class E felony, possession of .5 ounces or more of marijuana with intent to sell or deliver, a Class E felony, and possession of .5 grams or more of cocaine with intent to sell or deliver, a Class B felony.  See Tenn. Code Ann. §§ 39-16-503, -17-417.  In this appeal as of right, the Defendant contends that (1) the trial court erred by denying his motion to suppress evidence discovered during a traffic stop and (2) the evidence was insufficient to sustain his convictions.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined.  DAVID H. WELLES, J., not participating.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Mariet L. Patrick.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On October 26, 2007, the Defendant was stopped by police for driving on a suspended license.  The present charges were brought against the Defendant as a result of the stop and subsequent search of the Defendant's vehicle.  Prior to trial, the Defendant filed a motion to suppress the evidence found as a result of the traffic stop.  In the motion, the Defendant contended that the "traffic stop was done solely for the purpose of harassing" him and that

the tint on the car's windows made it "impossible to determine who the driver" was. On September 22, 2009, the trial court held a hearing on the motion to suppress.

At the suppression hearing, Officer Mason McDowell of the Dyersburg Police Department (DPD) testified that on October 25, 2007, he received a phone call from a "concerned citizen" informing him that the Defendant was "in possession of both marijuana and cocaine." The "concerned citizen" also informed Officer McDowell that the Defendant was using his girlfriend's car, a "maroon Buick sedan," and that the car was parked on Scott Street that evening. As a result of this information, Officer McDowell familiarized himself with the Defendant's picture and checked the status of the Defendant's driver's license. The Defendant's license had been suspended in 2003 and had never been reinstated. Officer McDowell also went to Scott Street and found the car parked where the "concerned citizen" said it would be.

The next day, October 26, 2007, Officer McDowell and Officer J.D. Cantu were in a parking lot on Jenkinsville-Jamestown Road when the Defendant drove by. Officer McDowell testified that the car passed directly in front of his patrol car, that he was able to see inside the car, and that the Defendant was driving the vehicle. Officer McDowell pulled out behind the Defendant in order to stop him for driving on a suspended license. When Officer McDowell activated his emergency lights, the Defendant "accelerated very quickly and attempted to elude" the officers. Officer McDowell activated his siren and followed the Defendant as he turned onto Simpson-Hill Road and then onto Revell Road. The Defendant then turned right onto a gravel driveway and cut into a field.

While driving through the field, the Defendant hung a "zip lock baggie" out the driver's side window and dumped a white powder into the field. Because the powder appeared to be cocaine, Officer McDowell was careful not to drive through the substance as he followed the Defendant. The Defendant then drove back onto Revell Road and Officer McDowell "continued to follow him maybe another quarter of [a] mile" before the Defendant stopped "in front of a house." The officers approached the car, and Officer McDowell ordered the Defendant to get out of the car "several times." However, the Defendant refused to do so, and Officer McDowell "opened up the driver door and [] pull[ed] [the Defendant] from the vehicle." Officer Cantu ordered the passenger out of the car, and the passenger complied with Officer Cantu's commands. Officer McDowell ordered the Defendant "to the ground," but the Defendant "stood up and began to pull away." Officer McDowell struggled to get the Defendant to the ground, and the Defendant was ultimately sprayed with "a chemical agent" before being taken into custody.

Officers McDowell and Cantu then searched the Defendant's car and found a white powder on the steering wheel, the driver's side door, arm rest, seat, and floorboard. The

Defendant also had white powder on his hands and shirt. Officer McDowell collected as much of the powder as he could from the car. Inside the car, the officers found "a large sack" of plant material that appeared to be marijuana in the center arm rest. The officers also found a set of digital scales inside the car. The Defendant also had $1,683 in cash on him when he was arrested. While the Defendant's car was being searched, three other officers secured the field and collected as much of the white powder from the field as they could. Officer McDowell testified that he was present when another officer, Sterlin Wright, questioned the Defendant about the incident and that the Defendant admitted the marijuana and cocaine were his.

Officer McDowell's testimony at trial was essentially identical to his testimony at the suppression hearing. Officer Cantu testified at trial that he was with Officer McDowell on October 26, 2007, when a maroon Buick sedan drove by. Officer Cantu further testified that he was able to see the driver through the car's window and that he identified the Defendant as the car's driver. Officer Cantu also saw the Defendant dump a white powder out of "a quart sized plastic bag" from the driver's side window as the Defendant drove through the field. Sergeant Jim Joyner and Investigators Monty Essary and Cara Johnson of the DPD testified that they secured the field and collected as much of the white powder as they could. Officer Cantu testified that he collected all of the evidence found in the Defendant's car and in the field and transported it to the police station.

Special Agent Dana Parmenter of the Tennessee Bureau of Investigation (TBI) testified that she was a forensic scientist specializing in drug identification. Special Agent Parmenter analyzed the white powder and plant material collected by the DPD officers in this case. Special Agent Parmenter testified that the white powder was cocaine. Special Agent Parmenter also testified that the cocaine collected from the Defendant's car weighed .8 grams and that the cocaine collected from the field weighed 21.6 grams. Special Agent Parmenter also concluded that the plant material was marijuana and weighed 130.5 grams, or approximately 5 ounces. Sergeant Todd Thayer of the DPD testified at trial as an expert witness "in the field of illegal drug transactions." Sergeant Thayer testified that 22 grams of cocaine was "a very large amount" and that 130 grams of marijuana was also "a large amount." Sergeant Thayer opined that someone with that amount of narcotics, digital scales, and a large amount of cash was likely "a seller or a dealer."

The Defendant testified at trial that on October 26, 2007, he was driving his girlfriend's car down Jenkinsville-Jamestown Road. According to the Defendant, "[his] music was up loud" and "[a]t that particular point [he] was getting high." The Defendant testified that he "had a bottle of alcohol in the car . . . [and] was smoking marijuana" when he saw Officer McDowell's patrol car in his rearview mirror. The Defendant told the jury that he "panicked because [he] was drinking and driving" and that he was also startled by the

fact that it was "the city police in the county jurisdiction." The Defendant testified that he "was attempting to stop" when he "slid over into the field" and that he decided to "drive out of [it]" rather than stop in the field. The Defendant denied telling the police that the cocaine belong to him but admitted that he "own[ed] up to the marijuana." The Defendant told the jury that the marijuana was "[j]ust to get high . . . nothing but just a couple of ounces" that would have lasted him "about no more than three days." The Defendant testified that he "didn't know nothing about no cocaine" and denied dumping the cocaine from the car. The Defendant also testified that the money belonged to his girlfriend, was locked away in the glove compartment, and was not on his person as Officer McDowell had testified.

Based on the foregoing evidence, the jury convicted the Defendant of possession of .5 ounces or more of marijuana with intent to sell or deliver, possession of .5 grams or more of cocaine with intent to sell or deliver, and evading arrest in a motor vehicle. The trial court sentenced the Defendant as a persistent offender with respect to the possession of cocaine conviction and as a career offender on the possession of marijuana and evading arrest convictions. The trial court sentenced the Defendant to 20 years for the possession of cocaine conviction, 6 years for the possession of marijuana conviction, and 6 years for the evading arrest conviction. The trial court ordered all of the sentences to be served concurrently for an effective 20-year sentence. The trial court ordered that the sentence in this case be served consecutively to "all prior convictions and parole revocations."

## ANALYSIS

The Defendant contends that the trial court erred by denying his motion to suppress the evidence discovered as a result of the traffic stop. The Defendant argues that the officers "did not have [the] requisite reasonable suspicion to stop him" and that the "[pretextual] stop was no more than an ambush of the Defendant." The Defendant also contends that the evidence was insufficient to sustain his convictions. The State responds that the traffic stop was valid because the officers had reasonable suspicion to believe that the Defendant was driving on a suspended license, which is a criminal offense. The State also responds that the Defendant has waived appellate review of the sufficiency issue.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Both proof presented at the suppression hearing and proof presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998); State v. Perry, 13 S.W.3d 724, 737 (Tenn. Crim. App.

-4-

1999). However, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). However, a police officer may make an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 20-21 (1968); Binette, 33 S.W.3d at 218.

A police officer must have such a reasonable suspicion in order to stop a vehicle without a warrant. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). Our supreme court has stated that "when an officer turns on [his] blue lights," a stop has occurred. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); accord State v. Williams, 185 S.W.3d 311, 316 (Tenn. 2006). Reasonable suspicion is determined by an examination of the totality of the circumstances. Binette, 33 S.W.3d at 218. Circumstances relevant to an analysis of reasonable suspicion include "the officer's objective observations [and any] [r]ational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997).

Tennessee Code Annotated section 55-50-504(a)(1) provides that:

A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel . . . when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor.

(emphasis added). Officer McDowell testified that the night before the traffic stop, he had familiarized himself with the Defendant's picture and checked the status of the Defendant's license. Officer McDowell learned that the Defendant's license had been suspended in 2003 and never reinstated. Officer McDowell testified that on the day of the stop, he was able to see into the vehicle and identify the Defendant as the driver. Officer Cantu also testified that he could see into the vehicle and that he identified the Defendant as the driver. Because the Defendant committed the crime of driving on a suspended license in front of the officers,

they had reasonable suspicion to stop the Defendant. Accordingly, we conclude that the trial court did not err by denying the Defendant's motion to suppress.

The Defendant also contends that the evidence was insufficient to sustain his convictions. However, the Defendant makes no mention of this issue in the one paragraph of argument contained in his brief. "Issues which are not supported by argument . . . will be treated as waived in this court." Tenn. Ct. Cr. App. R. 10(b); see also State v. Sanders, 842 S.W.2d 257, 260-61 (Tenn. Crim. App. 1992). Accordingly, we conclude that the Defendant has waived this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE