# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 17, 2013 Session

## STATE OF TENNESSEE v. DENVER JOE McMATH, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-A-419      Monte Watkins, Judge**

---

**No. M2012-01260-CCA-R3-CD   Filed November 1, 2013**

---

Defendant, Denver Joe McMath, Jr., was indicted by the Davidson County Grand Jury for six counts of aggravated sexual battery and four counts of rape of a child. On motion of the State, the indictment was amended to include four counts each of aggravated sexual battery and rape of a child, and the remaining two counts of aggravated sexual battery were dismissed. Defendant was convicted as charged on all counts of the amended indictment and sentenced to an effective sentence of 140 years. In this direct appeal, Defendant asserts 1) the State's bill of particulars was insufficient to state the offenses with specificity; 2) the trial court erred by allowing into evidence the testimony of three State's witnesses, as the testimony constituted inadmissible character evidence and inadmissible hearsay; 3) the trial court erred by allowing the State to introduce into evidence a drawing enclosed with a letter from Defendant to the son of Defendant and the victim's mother; and 4) the trial court erred in its sentencing. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, Jr., J., concurs in result.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Denver Joe McMath, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

**Facts**

*Trial*

The victim was born on September 5, 1990. Defendant was her mother's boyfriend and the father of her younger half-brother. At the time of the crimes, the victim lived with Defendant, her mother, her half-brother, her two sisters, and her older brother.

The victim recalled that the first incident happened during the winter of her fourth grade year. She testified that Defendant told her to come into his bedroom and sit beside him on the bed. Defendant kissed the victim, inserting his tongue into her mouth, and then gave her some coloring books. On another occasion, Defendant went into the victim's bedroom and touched her breasts, with his hand on top of her clothes, while she was sleeping in her bed. The victim testified that one night, "late at night," Defendant went into her bedroom where she and her twin sister were sleeping, and performed oral sex on her. She testified that Defendant pulled her pants down and put his mouth on her vagina.

The victim recalled an incident when she was in the sixth grade and Defendant made her perform oral sex on him in the laundry room of their house. The victim did not know what oral sex was, and Defendant told her to "put [her] mouth on it, and [she] had no choice." The victim testified that it happened "[a] lot." She testified that Defendant ejaculated in her mouth. She testified that she was afraid that if she did not do as Defendant told her, Defendant would beat her. She testified, "he always beat[ ] us." The victim testified that she could not count the number of times she performed oral sex on Defendant. She recalled the incident in the laundry room and another occasion in the kitchen. On one occasion, her older brother walked into the laundry room while the victim was performing oral sex on Defendant, and Defendant "just started beating him."

The victim also testified that Defendant called her downstairs to watch pornography with him. She testified that Defendant was masturbating while watching two people on television have sex. Defendant then told the victim to go to the laundry room, where he made her perform oral sex on him. She testified, "[o]ne time, he had called me downstairs and he was rolling up weed and then he smoked it and then told me to smoke it." The victim smoked the marijuana and then went upstairs, but she was not feeling "normal" and she thought she was "high." Defendant called her back downstairs and made her perform oral sex on him.

On another occasion, the victim fell asleep in her mother's bedroom while watching her youngest brother while her mother was at work. She awoke to Defendant touching her. The victim recalled another incident when Defendant touched her chest in the living room. She testified, "[I] was just scared and I told him – I told him that I was going to tell my mother and he said [']you tell[,] I'm going to kill you.[']"

The victim testified that the abuse ended when she was in eighth grade after the family moved to another residence. Defendant "stayed there on and off." The victim's older brother told the victim's mother about the abuse when the victim was in the tenth grade.

The victim's older brother testified that Defendant physically abused him as a child. He recalled an incident when his mother was in the hospital giving birth to his younger brother, and Defendant told him to watch for a cab that was coming to pick him up. After waiting for awhile and not seeing a cab, he went upstairs to tell Defendant. When he walked inside the bedroom he saw Defendant "on the bed with his thang out and [the victim] was in the room with him." He testified that Defendant's penis was erect. On another occasion, at 2:30 or 3:00 a.m., the victim's brother saw Defendant "on top of [the victim] giving her oral sex" in the living room. On another occasion, the victim's brother was outside and he saw Defendant and the victim through the window in the laundry room. He testified "just something was awkward. . . ." He testified that in 2007, during an argument with the victim, he told his mother that Defendant had abused the victim in the past.

The victim's mother testified that she and Defendant lived together with her five children for 15 years. She testified that Defendant never had a "steady job" and that he "demanded money" from her. She testified that when the victim was 16 years old, she discovered that Defendant had previously molested the victim. The victim's mother confronted Defendant with the allegation, and Defendant initially denied it. Defendant then said, "'if I did do it I was on drugs and alcohol.'" During the investigation of this case, the victim's mother attempted to speak to Defendant while wearing a "wire," but Defendant refused to meet with her and said, "Bitch, you're trying to set me up." The victim's mother received a letter from Defendant to his son, the victim's younger brother, that contained a drawing of a woman with a gun to her head. She received the letter on the Saturday prior to testifying in this case. She perceived the drawing as a threat.

Melinda Evans, an investigator with the Tennessee Department of Children's Services, testified that she investigated the allegations against Defendant after the victim's twin sister disclosed information about the abuse to someone at school. She testified that the victim was "initially very reserved and very reluctant" to speak to her. The victim told Ms. Evans that Defendant had touched her breasts and buttocks on top of her clothes. The victim

was 17 years old at the time of the interview and stated that the incidents happened four years prior. The victim denied that she had ever touched Defendant.

Eric Fitzgerald, of the Sex Crimes Unit of the Metro Nashville Police Department, testified that he interviewed the victim. Detective Fitzgerald testified that the victim was initially a "little stand-offish," but that she eventually described the events, which she stated began when she was in fourth grade. She told Detective Fitzgerald that it started as kissing, then Defendant touched her breasts outside her clothes, then inside her clothes, and her vagina, and eventually, Defendant performed oral sex on the victim and had the victim perform oral sex on him. Detective Fitzgerald also interviewed the victim's older brother, who had witnessed some incidents of abuse.

Defendant did not testify or present any proof at trial.

*Rule 404(b) hearing*

At a pretrial hearing, the victim's mother testified that after learning of the allegations that Defendant had molested her daughter, she confronted him, and Defendant responded that "if he did do it he was on alcohol and drugs." On cross-examination, she acknowledged that Defendant initially denied the allegations. She confronted Defendant during a phone call he made to her to "check up on his son." She testified that the conversation took place after the victim reported the abuse to a school counselor but before Defendant's arrest.

The victim testified at the hearing that Defendant showed her pornography and masturbated immediately prior to instructing her to perform oral sex on him. She was 11 or 12 years old at the time. She also testified that Defendant had her smoke marijuana with him before engaging in sexual activity with her.

The victim's older brother testified at the hearing that he was afraid of Defendant because Defendant was physically abusive. He witnessed Defendant engage in sexual activity with the victim on more than one occasion but did not report the abuse due to his fear of Defendant. He testified that on one occasion, Defendant became aware that the older brother had seen Defendant engage in a sexual act with the victim, and Defendant then "roughed [him (older brother)] up." Defendant's physical abuse of the older brother prevented him from reporting the abuse until he was 19 years old.

At the conclusion of the pretrial hearing to determine the admissibility of the above testimony of the three witnesses, the trial court made the following findings and conclusions:

Well, first of all, with respect to [the victim's mother] and what the defendant said when she confronted him about this, the Court does believe it's an admission against interest. And, you know, the rule even goes so far as to say even if it's given in the form of an opinion it is still admissible. And this was sort of – sort of an opinion, if I did it I was drunk. Kind of given a rationality or rational for it – rationalization for it I should say. So I believe the statement of – can come in.

Secondly, with respect to [the victim], I think it does raise a material issue to use this as part of his way of sexually abusing her. And again, I think that those statements can come in.

Now, with respect to Darryl Hawk, it's a little bit touchier question of – however, Mr. Hawk testified that, you know, one specific incident of abuse was because he believed – Mr. Hawk believed that the defendant found out that he had told – Mr. Hawk had told his sister about what he had observed and he truly believed that this is why he was subjected to that abuse. I think it adds to his fear of disclosing this information because of not only the prior abuse, but the abuse that was closely associated with that particular incident as such I think that that should come in as well.

**Analysis**

I. Bill of particulars

Defendant contends that the State's response to his motion for bill of particulars was insufficient to adequately identify the offenses charged. The State responds that Defendant has waived any objection to the State's bill of particulars because he did not object at trial or request that the trial court direct the State to file an amended bill of particulars. Defendant also failed to cite any relevant authorities. We agree with the State.

Prior to trial, Defendant filed a motion for bill of particulars, and the State responded by filing a bill of particulars. Defendant asserts that the State's bill of particulars is insufficient in that it fails to state the "date, time or year that the alleged offenses took place" or "the place where any of these alleged offenses took place." Defendant also asserts that the bill of particulars fails to identify the circumstances surrounding the events or state what location within the residence the offenses occurred, thereby making the offenses indistinguishable. The bill of particulars filed by the State states in its entirety as follows:

The Office of the District Attorney General, prosecuting on behalf of the State of Tennessee, submits the following information in response to the Defendant's Request for Bill of Particulars:

Each of the counts reflects a single incidence of sexual abuse alleged to have occurred at the family's residence at [the victim's street address] in Davidson County.

**Counts 1 & 2 Aggravated Sexual Battery** – refers to two separate incidences of the defendant fondling the victim's breasts.

**Counts 3 & 4 Aggravated Sexual Battery** – refers to two separate incidences of the defendant fondling the victim's genitals.

**Counts 5 & 6 Rape of a Child** – refers to two separate incidences of the defendant forcing the victim to perform fellatio, sexually penetrating her mouth with his penis.

**Counts 7 & 8 Rape of a Child** – refers to two separate incidences of the defendant performing cunnilingus on the victim, sexually penetrating her genitals with his mouth.

There is nothing in the record to show that Defendant, prior to trial, requested a more specific bill of particulars or otherwise objected to the State's response. In his second amended motion for new trial, Defendant challenged the State's bill of particulars, asserting that "[t]he trial court erred in failing to force the State, pursuant to the Defendant's request and T.R.C.P. 7(c), to answer the Defendant's Bill of Particulars. The State's response was not adequate to effectively notify the Defendant of the dates, times and locations of the offenses alleged in the indictment."

Tennessee Rule of Appellate Procedure 36(b) states, "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Furthermore, "it is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct." *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952)). For this reason, Defendant is not entitled to relief on this issue.

In addition, other than Defendant's reference to Rule 7 of the Tennessee Rules of Criminal Procedure, which he argues the State's response fails to comply with, Defendant cites no other authority in support of his argument. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]" Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Defendant failed to object to the bill of particulars prior to trial and has failed to cite any authority in his brief to support his argument. As stated above, Defendant is not entitled to relief on this issue.

## II. Evidentiary issues

Defendant contends that the trial court erred by allowing the following testimony of three State's witnesses. Specifically, Defendant asserts that the following testimony should have been excluded at trial: 1) testimony by the victim's mother that, when she confronted Defendant about the allegations, Defendant said, "if he did do it he was on alcohol and drugs[;]" 2) testimony by the victim that Defendant made her smoke marijuana and watch pornography before engaging in sexual acts with him; and 3) testimony by the victim's brother that Defendant physically abused him.

Generally, the admission of evidence at trial is entrusted to the broad discretion of the trial court, and as such, a trial court's ruling on the admission of evidence may only be disturbed upon a showing of an abuse of discretion. *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (citing *State v. DuBose,* 953 S.W.2d 649, 652 (Tenn. 1997)). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). For evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence may be excluded by the trial court if its probative value is substantially outweighed by the danger of unfair prejudice. Tenn. R. Evid. 403.

*A.    Testimony of the victim's mother*

Defendant argues that the testimony by the victim's mother that Defendant, when confronted, stated that "if he did do it he was on alcohol and drugs" violates Tennessee Rule of Evidence 404(b) and that it contains inadmissible hearsay in violation of Tennessee Rule of Evidence 802.

Rule 404(b) provides that evidence of other crimes, wrongs, or bad acts are not admissible to prove character to show action in conformity with that character but may be admissible for "other purposes," assuming the following conditions are satisfied:

1)    The court upon request must hold a hearing outside the jury's presence;

2)    The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

3)    The court must find proof of the other crime, wrong, or act to be clear and convincing; and

4)    The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).  Some examples of "other purpose[s]" for which such evidence may be admitted include motive, intent, guilty knowledge, identity of the defendant, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004).  If a trial court substantially complies with the procedural requirements of Rule 404(b), this court will not disturb the trial court's ruling absent an abuse of discretion. *Id*.

The State asserts that the testimony was properly admitted for the purpose of showing Defendant's motive.  The State argues that the statement by Defendant was not offered to prove Defendant's character for using drugs or alcohol, but rather to show Defendant's motive.  Following the pretrial hearing, the trial court concluded that the statement by Defendant to the victim's mother was "an admission against interest," but the trial court did not, as the State asserts in its brief, make a finding that the statement showed Defendant's motive for the offenses.  We note that admissions by a defendant, even if admissible under the hearsay exception of Rule 803(1.2), are still subject to being excluded by other rules of

evidence, including exclusion under Rule 404(b). *See State v. Lewis*, 235 S.W.3d 136, 145 (Tenn. 2007)). The trial court's finding that the statement was an admission against interest does not mean that the statement is not subject to exclusion under Rule 404(b).

Nevertheless, we conclude that the trial court substantially complied with Rule 404(b)'s procedure and found that the statement provided a "rationalization" for the offenses, which we interpret as a qualified admission that maybe Defendant did in fact commit the offenses. We conclude that the trial court did not abuse its discretion by admitting the statement.

Defendant asserts that the statement "could easily have been sanitized" to exclude the portion that Defendant used drugs or alcohol, but that the court "chose not to do so[.]" As the State points out, Defendant did not make such a request of the court, and furthermore, a "sanitized" version of the statement would consist of, "if I did it," which conveys little, if any, meaning.

Finally, Defendant contends that the statement was not an admission under Tenn. R. Evid. 803(1.2) because it is not an actual admission of wrongdoing, but rather a conditional statement. The trial court found that the statement was admissible because, although Defendant initially denied the allegations, the statement was an attempt to explain his actions. Tennessee Rule of Evidence 803(1.2) sets out that among the statements not excluded by the hearsay rule is "[a] statement offered against a party that is . . . the party's own statement in either an individual or representative capacity." Defendant's argument that a "statement" is distinguishable from an "admission," and that Defendant's "statement . . . is not an admission as contemplated under Rule 803(1.2) because it is not an 'admission'" is without merit. The rule does not require that the statement be an admission of criminal activity, only that it be a statement made by the party. "This means that any assertion a party spoke, wrote, or did may be used against that party as an admission." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000) (citing Neil P. Cohen et al., Tennessee Law of Evidence § 803 (1.2) 2, at 513). The trial court did not abuse its discretion by admitting the statement as a hearsay exception.

### B.  *Testimony of the victim*

Defendant also challenges the trial court's admission of testimony by the victim that Defendant had her smoke marijuana and view pornography prior to engaging in sexual activity with her. The State argues that the evidence was admitted not to show Defendant's character in conformity with drug use and viewing pornography, but rather "to provide details necessary to distinguish individual instances of abuse . . . ." The trial court found that

the evidence was admissible because it provided a context for the abuse and "raise[d] a material issue to use this as part of his way of sexually abusing her."

The State cites *State v. Gilliland*, 22 S.W.3d 266, 272 (Tenn. 2000) and argues that evidence of bad acts may be admissible for "completion of the story." However, the trial court did not make such a finding in this case, nor does the State offer an analysis of the evidence under the "contextual background" test for admissibility in *Gilliland*. In *Gilliland*, the Tennessee Supreme Court set forth a test for the admissibility of evidence of other crimes, wrongs, or acts that is relevant only for providing contextual background:

> [W]hen the state seeks to offer evidence of other crimes, wrongs, or acts that is relevant only to provide a contextual background for the case, the state must establish, and the trial court must find, that (1) the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case; (2) the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Id*. The language of the aforementioned test is specifically restricted to "evidence of other crimes, wrongs, or acts that is relevant *only* to provide a contextual background for the case[.]" *Id*. (emphasis added); *see State v. Leach*, 148 S.W.3d 42, 58 (Tenn.2004).

Here, evidence that Defendant had the victim smoke marijuana and watch pornography was not offered to show a contextual background. Rather, we conclude that the evidence was relevant to show Defendant's opportunity, motive, and intent to commit the offenses. Therefore, the *Gilliland* test is inapplicable in this case. Although the trial court's finding regarding the "other purpose" for which the testimony was admissible lacked detail or explanation, we agree with the ruling of the trial court. Defendant is not entitled to relief on this issue.

### C.    *Testimony of the victim's brother*

Defendant asserts that it was error for the trial court to admit the testimony of the victim's brother that Defendant had physically abused him. Defendant argues that the testimony was "highly prejudicial," that the probative value was "minimal to the point of not having any at all[,]" and that the State offered no other purpose for admission of the evidence under Rule 404(b). The State asserts that the evidence was relevant to show the witness's motivation for not reporting Defendant's sexual abuse of the victim.

We conclude that the trial court did not abuse its discretion by allowing the victim's brother to testify regarding the physical abuse by Defendant. As the trial court noted, the victim's brother testified that on one occasion, Defendant physically assaulted him immediately after he told his sister that he had seen Defendant and her engage in a sexual activity. Defendant asserts that the delay in the victim's brother disclosing the abuse was of no significance, other than being "a possible area of impeachment[.]" However, we agree with the State that a sibling's failure to reveal sexual abuse that he witnessed against his younger sibling until years afterwards is material, and evidence that the victim's brother was fearful of Defendant because of physical abuse is probative to explain his delay in reporting the abuse. Defendant is not entitled to relief on this issue.

### D.    *Letter from Defendant*

Defendant contends that the trial court erred by admitting into evidence a drawing that the victim's mother testified she received from Defendant. The drawing was enclosed with a letter from Defendant to their 11-year-old son, and it depicted a woman with a gun pointed at her head. The victim's mother received the letter on the Saturday before the trial in this case began, and she perceived the drawing as a threat from Defendant.

After hearing arguments from counsel regarding the drawing at a pretrial hearing, the trial court found that the drawing was relevant and noted that defense counsel would have the opportunity to cross-examine the victim's mother about the letter.

Defendant argues that the prejudicial effect of the drawing is substantially outweighed by its probative value and that the trial court "disregarded the defense's uncontroverted assertion that th[e] letter was addressed to [Defendant's son] and was not intended to come to [the victim's mother's] attention." In fact, the trial court considered Defendant's argument that the letter containing the drawing was addressed to Defendant's son, and not the victim's mother, noting, "why would anyone send anyone a [ ] drawing such as this during this time period and not even consider the possibility of what impact this may have on an individual?" From the record, it is apparent that the trial court considered Defendant's argument, but implicitly found that the timing and circumstances surrounding the letter indicate a possible threat against a witness by Defendant.

"Generally, evidence of threats against witnesses attributed to the accused is probative as being either (1) conduct inconsistent with the accused's claim of innocence or (2) conduct consistent with the theory that the making of such threats evinces a consciousness of guilt." *State v. Austin*, 87 S.W.3d 447, 477 (Tenn. 2002); *see also Tillery v. State*, 565 S.W.2d 509, 511 (Tenn. Crim. App. 1989) (concluding that "[a]ny attempt by an accused to conceal or

destroy evidence, including an attempt to suppress the testimony of a witness, is relevant as a circumstance from which guilt of the accused may be inferred").

We conclude that the trial court did not abuse its discretion in admitting the drawing into evidence. Due to the age of Defendant's son, the victim's mother opened the letter addressed to Defendant's son from Defendant. Enclosed with the letter was a drawing of a woman with a gun pointed at her head. The victim's mother received the letter shortly before testifying against Defendant. It is a reasonable inference that the letter was intended as a threat against a witness. Defendant is not entitled to relief on this issue.

III. Sentencing

Defendant contends that the trial court misapplied two enhancement factors and erred by imposing consecutive sentences.

At a sentencing hearing, the presentence report was admitted into evidence. The victim testified that Defendant sexually abused her from the time she was in the second grade through the seventh grade. She testified that she was promiscuous during her teenage years as a result of the sexual abuse. She testified that her twin sister was also sexually abused by Defendant but that she never got the opportunity to testify against Defendant because she had passed away the prior year. The victim testified that Defendant "doesn't deserve to be here. He deserves to be in prison. . . . He's dangerous. He's a monster." She testified that Defendant "was violent to everybody[,]" including her mother, her sisters, and her brothers.

The victim's mother testified that she had "trusted [Defendant] with everything [she] had" and that Defendant "took a lot from me and [her children]." She testified that the victim's twin sister died from cancer, but that she "was very sad that [Defendant] wasn't really being punished for what he did to her[.]"

Defendant gave a brief allocution but did not testify. At the conclusion of the sentencing hearing, the trial court found that confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct, that confinement was necessary to avoid depreciating the seriousness of the offense, and that confinement was particularly suited to provide an effective deterrent to others likely to commit similar offenses. The court declined to apply as a mitigating factor that Defendant's behavior neither caused nor threatened serious bodily injury, finding that "any time you engage in such an act as this you are threatening serious bodily injury when you have sex with a seven[-]year old child." The court applied as enhancement factors that Defendant had a previous history of criminal convictions and criminal behavior, that the victim was particularly vulnerable because of the victim's age, that the offense involved a victim and was committed to gratify

-12-

Defendant's desire for pleasure or excitement, and that Defendant violated a position of trust. The court sentenced Defendant to ten years for each count of aggravated sexual battery and twenty-five years for each count of rape of a child and ordered that all of the sentences be served consecutively, for an effective sentence of 140 years.

In his brief on appeal, Defendant misstates the standard of appellate review of sentencing decisions. The Tennessee Supreme Court adopted a new standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Currently, length of sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id*. at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d 68 at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id*. at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id*. The standard of review announced in *Bise* also applies to the manner of service of a sentence. *State v. Caudle*, 388 S.W.3d 273 (Tenn. 2012).

Defendant asserts that the trial court erred by applying enhancement factor (4), Tenn. Code Ann. § 40-35-114, arguing that the victim's age is an element of the offense. *See* Tenn. Code Ann. § 39-13-522. Defendant also asserts that the trial court erred by applying enhancement factor (7), because the court made no additional finding, and there was no evidence presented, that the offenses were committed for Defendant's pleasure and gratification. Defendant does not dispute that he had a lengthy criminal history or that he abused a position of trust, which the trial court also considered and applied in enhancing Defendant's sentence above the statutory minimum. The presentence report indicates that Defendant had numerous prior convictions. The record also supports the trial court's finding

that Defendant abused a position of trust in that he was the boyfriend of the victim's mother and lived with the victim's family for 15 years, acting as a father-figure to the victim and her siblings.

We conclude that the trial court properly sentenced the Defendant. Even if the trial court erred in applying two enhancement factors, the law is clear that the "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Bise*, 380 S.W.3.d at 706. As we stated, the record clearly supports, and Defendant does not challenge, the trial court's application of two other enhancement factors. Consequently, we uphold the trial court's enhancement of Defendant's sentence within the applicable range.

Regarding consecutive sentencing, a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

Tenn. Code Ann. § 40-35-115(b)(5) (2010).

Defendant does not challenge the court's application of the statute to his sentence, rather Defendant asserts that the trial court failed to make appropriate findings or state its reasons for applying the statute. We conclude that the record supports the trial court's application of the statute, and the trial court acted within its discretion in imposing consecutive sentences. The record shows that the relationship between Defendant and the victim was like that of a step-parent and step-child. Defendant lived in the same household with the victim for 15 years. Defendant was responsible for the children when the victim's mother was working. The sexual activity between Defendant and the victim occurred over a period of years and was undetected until after it had ended. The victim testified that Defendant began sexually abusing her when she was in the fourth grade, and the abuse continued through the eighth grade. Further, the abuse was extensive. Defendant began by kissing the victim and touching her breasts. Defendant then began performing oral sex on the victim and forcing the victim to perform oral sex on him. The victim testified that the

abuse was frequent, and the victim suffered a lasting emotional impact from the abuse. The record supports the imposition of consecutive sentences. Defendant is not entitled to relief.

## CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE